# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RUTH SMELSER,

       Plaintiff,

v.                                             Civ. No. 17-388 SCY/KK

SANDIA CORPORATION, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint. Doc. 15. The Court, having reviewed the parties' submissions and the relevant law, will **grant** the motion.

## I.     Procedural History

On November 30, 2016, Plaintiff Ruth Smelser filed this lawsuit in state court against her former employer, Defendant Sandia Corporation (Sandia), her supervisors, Defendants Hy Tran and Meaghan Sena Carpenter, and a coworker, Defendant Rick Mertes. Doc. 1-1. Plaintiff asserted a single claim for violations of the New Mexico Human Rights Act (NMHRA), NMSA 1978, § 28-1-7 (2004). *Id*. On March 30, 2017, Defendants removed the lawsuit on the basis of federal enclave jurisdiction, arguing that the lawsuit is subject to the Court's federal question jurisdiction because the events giving rise to it occurred during the course of Plaintiff's employment on Kirtland Air Force Base. Doc. 1 at 2 (citing *Allison v. Boeing Laser Tech. Services*, 689 F.3d 1234, 1236 (10th Cir. 2012)).

After the case was removed, Plaintiff amended her complaint to assert a number of federal and state law claims against Defendants. Doc. 11. Her two federal claims are a gender-based discrimination claim under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.

1

§ 2000e *et seq*., (Count V), and a disability-based discrimination claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq*. (Count VI). *Id*. In addition, Plaintiff asserts five New Mexico state law claims: NMHRA (Count I); negligence (Count II); an assault claim against Defendant Tran (Count III); breach of an implied contract claim against Defendant Sandia (Count IV); and respondeat superior (Count VII). *Id*.

With the exception of Plaintiff's respondeat superior claim,[1] Defendants have moved to dismiss all claims raised in Plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 15. On September 22, 2017, the Court stayed any further proceedings in the case pending resolution of the motion to dismiss, with the exception of Plaintiff's request to take jurisdictional discovery regarding the application of the federal enclave doctrine. Doc. 27. The Court gave Plaintiff until October 2, 2017 to submit a motion for this jurisdictional discovery. Doc. 29. Plaintiff, however, chose not to file any such motion. The Court will therefore resolve the motion to dismiss on the basis of the briefing submitted. *See* Docs. 15, 21, and 25.

## II.     Factual Background

The incidents that gave rise to this lawsuit occurred in Albuquerque, New Mexico, during the course of Plaintiff's employment with Sandia. Doc. 11 (Am. Compl.) ¶¶ 6, 14. Sandia is a "Delaware for-profit corporation doing business in New Mexico and located aboard Kirtland Air Force Base." *Id*. ¶ 2. Plaintiff has been employed with Sandia for thirteen years, most recently as an R&D laboratory support senior technologist. *Id*. ¶¶ 14, 15. During the relevant time period,

---

[1] Defendants did not expressly move to dismiss Plaintiff's respondeat superior claim nor did they raise dismissal of this claim in conjunction with any of Plaintiff's other claims. The Court therefore takes no action with regard to this claim in this Memorandum Opinion and Order. *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (indicating that "sua sponte dismissals and [] dismissals before the losing party has an opportunity to respond" are disfavored).

Defendants Tran and Carpenter were Sandia employees with supervisory authority over Plaintiff. *Id.* ¶ 17. Defendant Mertes was a Sandia employee who worked with Plaintiff. *Id.* ¶ 18.

In December 2011, Plaintiff alleges that she injured her right shoulder at work, which led to her medical providers assigning her a permanent impairment rating regarding lifting restrictions. *Id.* ¶ 19. Plaintiff asserts that Sandia has failed to accommodate these restrictions and instead has used the restrictions as a basis to criticize Plaintiff's work. *Id.* ¶ 20. In addition, Plaintiff has been diagnosed with thyroid cancer and her treatment has caused her to experience hand tremors that have affected her fine motor skills. *Id.* ¶¶ 16, 21. Plaintiff alleges that Sandia has also failed to accommodate her medical restrictions related to her cancer diagnosis and treatment. *Id.* ¶ 22. Because her cancer recovery and medications made her "very susceptible to [the] cold environments she had to work in", Plaintiff alleges that she requested reverse tweezers and voice transcription software, among other things, to accommodate this sensitivity. *Id.* ¶ 33. Sandia never provided her with such accommodations. *Id.* When Plaintiff asked Defendant Carpenter for reasonable accommodations due to her disability and cancer treatment side effects, she alleges that Defendant Carpenter told her "in no uncertain terms she would not listen to these medical issues." *Id.* ¶ 32. Plaintiff also alleges that Sandia discussed and disclosed Plaintiff's cancer diagnosis to others within the workplace in violation of Plaintiff's privacy rights. *Id.* ¶ 23.

Plaintiff alleges that her coworker, Defendant Mertes, wanted a male applicant hired for her position and that when she was selected instead, he became "antagonistic" toward her. *Id.* ¶ 25. Although Defendant Mertes was obligated to train Plaintiff, he refused to do so -- despite her asking him for training on multiple occasions. *Id.* ¶¶ 27-28. Defendant Mertes undermined and disrupted Plaintiff's work, "disregarded 'Do Not Enter' signs when work was in progress, routinely told other employees Plaintiff was not doing her job properly and took a condescending

tone with Plaintiff when she sought help and guidance." *Id*. ¶ 27. Defendant Mertes also held the side effects of Plaintiff's medication against her and "interpreted the side effects as a lack of proficiency and capability." *Id*. ¶ 29. Plaintiff alleges that Defendant Mertes's "efforts resulted in Plaintiff receiving a work evaluation that was deemed 'Deficient'". *Id*. ¶ 35. Because Defendant Mertes refused to train her, Plaintiff alleges she was never "officially certified to conduct 'mass measurements'", which was a requirement of her job. *Id*. ¶ 36. Plaintiff claims, however, at some point during her employment, "her training jacket was changed to reflect that she was qualified to conduct 'mass measurements' even though she had not received the requisite training." *Id*. In so doing, Defendants allegedly made it appear that she was adequately trained to conduct mass measurements, even though she had not had sufficient training to become proficient. *Id*. ¶ 37. Thus, Plaintiff alleges that any "real or perceived lack of proficiency" was due to a void in training. *Id*.

Plaintiff also alleges that she frequently took safety issues and ethics violations to Defendant Carpenter. *Id*. ¶ 32. Subsequent to her doing so, Defendant Carpenter scheduled weekly meetings with Plaintiff, an action Plaintiff alleges "typically predicated firing." *Id*. ¶ 34. Plaintiff alleges that Defendant Carpenter was also Defendant Tran's supervisor and according to Plaintiff, Defendant Carpenter often deferred to Defendant Tran on issues that required her decision. *Id*. ¶¶ 30-31. Plaintiff alleges that Defendant Tran "has a history of negative interactions with women and has retaliated against Plaintiff, treated Plaintiff poorly and differently from male employees at least in part, because of Plaintiff's gender consistent with Plaintiff's Charge of Discrimination and affidavit."[2] *Id*. ¶ 24. On one occasion, Defendant Tran

---

[2] Although Plaintiff referenced the charge of discrimination and affidavit in her amended complaint, neither of these documents was submitted with the complaint. These documents were, however, included with Plaintiff's briefing on Defendant's motion to dismiss her initial complaint. *See* Doc. 12, Exhibits 1-2.

"cornered Plaintiff in the office, screamed and berated her in a unprofessional and hostile manner in an attempt to embarrass, intimidate and belittle Plaintiff." *Id.* ¶ 41. Plaintiff further alleges that Defendant Tran "intentionally engaged in high intensity verbal assaults" on her. *Id.* ¶ 49.

With regard to Defendants Mertes and Carpenter, Plaintiff alleges that they have "retaliated against [her], treated her poorly, and differently from other Sandia employees at least in part, because of Plaintiff's gender, disability, and serious medical condition, consistent with [her] Charge of Discrimination and affidavit." *Id.* ¶ 38.

On January 13, 2016, Plaintiff filed a charge of discrimination with the New Mexico Department of Workforce Solutions Human Rights Division. *Id.* ¶ 7. On September 1, 2016, the Department issued a determination of no cause letter.[3] *Id.* ¶ 8; *But see id.* ¶ 10 (indicating that the Department issued a non-determination letter).

## III.    Legal Standards

Defendants seek dismissal of Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Doc. 15 at 2, 10, 15. With regard to Rule 12(b)(1), Defendants first contend that Plaintiff's alleged failure to exhaust administrative remedies has deprived the Court of subject matter jurisdiction over her federal claims. *See id.* at 10. Defendants' second jurisdictional argument is that the federal enclave doctrine, which served as the basis for removal of this lawsuit from state

---

[3] It is unclear from Plaintiff's amended complaint whether she received a determination of no cause letter, as she alleges in ¶ 8, or a non-determination letter, as she alleges in ¶ 10. *See* 9.1.1.8(I)(1) NMAC ("Immediately after the bureau's receipt of a complainant's complaint, a complainant who seeks to remove the complaint from the bureau and pursue the complaint in district court may request and shall receive from the director an order of nondetermination"); *see* 9.1.1.10(A-B) NMAC (providing that "[a]fter an investigation is completed, the director will issue a determination of probable or no probable cause. If the director determines that no probable cause exists, the director shall dismiss the complaint and notify the parties of the dismissal."). This inconsistency need not be resolved at this stage because it is not material to the Court's resolution of Defendants' motion to dismiss.

court, bars some of Plaintiff's state claims. Doc. 15 at 3-5; Doc. 1 at 2 (Notice of Removal); *See Celli v. Shoell*, 40 F.3d 324, 328 (10th Cir. 1994) (stating that federal enclave jurisdiction is "a form of federal question jurisdiction"); *Akin v. Ashland Chem. Co*., 156 F.3d 1030, 1034 (10th Cir. 1998) (indicating that "[p]ersonal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."). Under Rule 12(b)(6), Defendants argue that Plaintiff's claims, including any that may survive Rule 12(b)(1) scrutiny, fail to state a claim. Doc. 15 at 5-14. Accordingly, the Court sets forth below the applicable legal standards for both Rule 12(b)(1) and 12(b)(6) motions.

Rule 12(b)(1)

Motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). On a facial attack, the Court presumes all of the allegations contained in the complaint to be true. *Id*. "But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations" and may "allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion." *Campos v. Las Cruces Nursing Ctr*., 828 F. Supp. 2d 1256, 1265 (D.N.M. 2011) (citation omitted).

Where, however, the jurisdictional issues raised in a Rule 12(b)(1) motion are intertwined with the case's merits, the "court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion." *See Holt v. United States*, 46

F.3d 1000, 1003 (10th Cir. 1995). "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id*.; *see also Sizova v. Nat'l Inst. of Standards & Tech*., 282 F.3d 1320, 1324 (10th Cir. 2002) ("[T]he focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute. Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.") (internal citation omitted)).

Here, to the extent Defendants move to dismiss under Rule 12(b)(1) due to a failure to exhaust or the applicability of the federal enclave doctrine, they mount a factual challenge to the existence of subject matter jurisdiction. Accordingly, the Court may consider evidence outside of the pleadings to decide these issues. That being said, conversion of Defendants' motion to a Rule 56 summary judgment motion is not necessary because resolution of these issues does not require resolution of the substantive aspects of Plaintiff's claims. More specifically, Plaintiff may not bring her federal Title VII and ADA claims unless she has exhausted these claims. *See Apsley v. Boeing Co*., 691 F.3d 1184, 1210 (10th Cir. 2012) ("Under both Title VII and the ADA, exhaustion of administrative remedies is a prerequisite to suit."). A determination as to whether Plaintiff exhausted her administrative remedies is not intertwined with the merits of her federal claims such that conversion to a summary judgment motion is necessary. *See Sizova*, 282 F.3d at 1324-25 (determining that conversion of a Rule 12(b)(1) motion to a summary judgment motion was not necessary as to "the jurisdictional issue [of] whether [the plaintiff] has exhausted her administrative remedies, a matter that is simply not an aspect of her substantive [Title VII] claim of discrimination"); *see also Kibler v. Genuine Parts Co*., 2017 WL 4410786, at *3 n.5 (D.N.M. Oct. 2, 2017) (determining that conversion of Rule 12(b)(1) motion to a Rule 56 motion

was not necessary where defendant mounted a factual challenge to the court's subject matter jurisdiction by arguing that the plaintiff failed to exhaust her NMHRA claim). Likewise, the parties' factual arguments concerning the applicability of the federal enclave doctrine are not intertwined with the substantive merits of Plaintiff's NMHRA, implied contract, and negligence state law claims such that conversion is necessary. *See Benavidez v. Sandia Nat'l Labs.*, 212 F. Supp. 3d 1039, 1093-94 (D.N.M. June 27, 2016) (where the district court considered matters beyond the pleadings, including declarations attached to notice of removal, to resolve motion to dismiss based on the federal enclave doctrine). Therefore, the Court will consider the evidence submitted by the parties on Defendants' arguments under Rule 12(b)(1).

Rule 12(b)(6)

Rule 12(b)(6) allows for the dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (internal citation omitted). In considering dismissal under Rule 12(b)(6), the Court will "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Generally, a district court can consider outside materials only by converting a 12(b)(6) motion to dismiss to a motion for summary judgment. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005). But conversion is unnecessary when the documents are referenced in the complaint and their authenticity is unchallenged. *Id.* at 1253-54.

A complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element. The nature and specificity of the allegations required to state a plausible claim will vary based on context. But mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks and citations omitted). "Thus, a claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.    Analysis

1.    Plaintiff's Title VII and ADA Claims Must Be Dismissed Under Rule 12(b)(1) for Failure to Exhaust

A plaintiff must generally exhaust his or her administrative remedies prior to pursuing a Title VII or ADA claim in federal court. *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012) (exhaustion of administrative remedies required before pursuing Title VII lawsuit); *see also MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) ("[A] plaintiff must exhaust her claims before the EEOC as a prerequisite to federal court jurisdiction over her ADA claims"). Exhaustion of administrative remedies is considered "a prerequisite to suit" under both Title VII and the ADA. *See Apsley*, 691 F.3d at 1210. "Title VII plaintiffs must clear three procedural hurdles before bringing suit in federal court: (1) file a discrimination charge with the EEOC, (2) receive a right-to-sue letter from the EEOC, and (3) file suit within ninety days of receiving the letter." *Kinney v. Blue Dot Servs. of Kan.,* 505 F.

App'x 812, 814 (10th Cir. 2012) (unpublished)[4]; *see also Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) ("[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."), *abrogated in part on other grounds by Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). These same requirements apply to ADA claims. *See Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005) (stating that "Title I of the ADA, which prohibits employment discrimination on the basis of disability, explicitly incorporates the powers, remedies, and procedures of Title VII, making clear that the procedural requirements of those two provisions must be construed identically").

In their motion to dismiss, Defendants argue that Plaintiff failed to administratively exhaust her Title VII and ADA claims because she did not file a charge of discrimination with the EEOC and receive right-to-sue letters. *See* Doc. 15 at 10. Defendants contend that Plaintiff's failure to exhaust administrative remedies has deprived the Court of subject matter jurisdiction over her federal claims. *See id.* Although Defendants treat this as a jurisdictional issue, the Tenth Circuit Court of Appeals has acknowledged that the previously-settled issue of whether exhaustion of administrative remedies under Title VII and the ADA implicates a district court's subject matter jurisdiction is no longer a settled issue based on recent opinions from the United States Supreme Court. *See Wickware v. Manville*, 676 F. App'x 753, 767 n.4 (10th Cir. 2017) (unpublished). The Tenth Circuit, however, has not expressly overruled its earlier holding that exhaustion is a jurisdictional prerequisite to a Title VII or ADA lawsuit, and it has declined to

---

[4] The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").

decide this issue where, as here, the defendants have not waived or forfeited an exhaustion argument. *Id*. at n.4; *see also McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007) (stating that courts "need not decide whether exhaustion is jurisdictional [where] there is no question of waiver or forfeiture."). As the Tenth Circuit recently emphasized in *Wickware*, "[i]rrespective of whether the failure to exhaust implicates subject-matter jurisdiction, it is beyond peradventure that exhaustion still serves the important purposes of protecting employers by giving them notice of the discrimination claims being brought against them and providing the EEOC . . . with an opportunity to conciliate the claims. Consequently, even if exhaustion is not jurisdictional, it is a condition precedent to suit." *Id*. at 767 (quotation marks, footnotes, and citations omitted). Therefore, the Court agrees with Defendants that Plaintiff was obligated to exhaust her administrate remedies before pursuing her Title VII and ADA claims in federal court.

It is clear in this case that Plaintiff has not exhausted her administrative remedies for her Title VII and ADA claims. Specifically, Plaintiff did not allege in her amended complaint that she took any steps to administratively exhaust these claims. The record also offers no indication that Plaintiff filed any charges of discrimination with the EEOC or that she received a right-to-sue letter. Moreover, Plaintiff concedes the lack of exhaustion in her response brief. *See* Doc. 21 at 5 (indicating that "she did not seek a timely review of her Title VII and ADA claims through the EEOC").

Plaintiff nonetheless raises two arguments urging the Court to allow her federal claims to proceed, neither of which the Court finds persuasive. First, Plaintiff claims that had she known Defendants intended to assert the federal enclave doctrine as a defense to her NMHRA claim in this lawsuit, she would have taken the steps necessary to exhaust her Title VII and ADA claims

at the same time she exhausted her NMHRA claim. Doc. 21 at 5. Plaintiff asks the Court to find

that Defendants have waived any exhaustion argument because they "tactically held [the federal

enclave doctrine] defense in abeyance." *Id*. The Court declines to make such a finding. Plaintiff

does not point to any authority supporting the notion that Defendants were obligated during the

state human rights division administrative proceedings to apprise her of any defenses they

planned to assert if she proceeded to file a lawsuit under the NMHRA. Furthermore, it was

Plaintiff's responsibility, not that of Defendants, to take the necessary steps to administratively

exhaust her federal claims. Plaintiff's argument is a futile attempt to shift the blame for her

failure to exhaust onto Defendants. Plaintiff's second argument fares no better. Without citing to

any authority, Plaintiff argues that the notice she received at the conclusion of the administrative

proceedings for her NMHRA claim also satisfies the exhaustion requirement for her Title VII

and ADA claims pursuant to the work-sharing agreement in place between the EEOC and the

New Mexico Human Rights Division. *See* Doc. 21 at 5. The work-sharing agreement between

the EEOC and the Division does "contemplate[] dual filed charges" such that a complaint

initially filed with the EEOC "will be deemed to have been properly filed with the Division as

well." *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶¶ 13, 15, 980 P.2d 65. The New Mexico

Supreme Court, however, has held that the work-sharing agreement does not permit "a shared

resolution of those charges by the EEOC and the Division" due to "significant differences in

administrative authority under federal and state law." *Id*. at ¶ 15. Thus, a non-determination

notice from the Division would not satisfy Plaintiff's obligation to independently exhaust her

federal claims through the EEOC. *See id*. at ¶¶ 11, 14 (holding that receipt of an EEOC right-to-

sue notice is insufficient to satisfy exhaustion requirements for a NMHRA claim); *see also*

*Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 814 (10th Cir. 2010) (noting that a number of courts

have found that "a state agency's right-to-sue notice does not trigger the federal filing period and vice versa"); *see also Benavidez*, 212 F. Supp. 3d at 1067 ("Whether complainants decide to pursue their grievances with the EEOC or with the NMHRD, they must exhaust their respective regimes' administrative remedies before seeking judicial review.").

Based on the foregoing, the Court concludes that Plaintiff cannot obtain relief in federal court on her Title VII and ADA claims because she did not exhaust her administrative remedies for these claims. *Bertsch*, 684 F.3d at 1030 (dismissing plaintiff's disparate treatment claim in Title VII lawsuit due to her failure to file this claim with the EEOC and to receive a right-to-sue letter); *Chung v. El Paso Sch. Dist. #11*, 659 F. App'x 953, 957 (10th Cir. 2016) (unpublished) ("A plaintiff may not bring a Title VII action until she has exhausted her administrative remedies by filing an EEOC charge and receiving notice of her right to sue"); *Juarez-Galvan v. United Parcel Serv., Inc.*, 577 F. App'x 886, 887 (10th Cir. 2014) (unpublished) ("A right-to-sue letter is a jurisdictional prerequisite to a Title VII lawsuit."). Thus, Plaintiff's Title VII and ADA claims, as set forth in Counts V and VI of Plaintiff's amended complaint, are dismissed without prejudice. *See Thompson v. Coulter*, 680 F. App'x 707, 712 (10th Cir. 2017) (unpublished) (noting that "a dismissal based on lack of exhaustion should ordinarily be without prejudice") (quoting *Fitzgerald v. Corr. Corp. of Am*., 403 F.3d 1134, 1139 (10th Cir. 2005)); *See also Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (holding that a dismissal based on jurisdiction did not address the merits and should be without prejudice); *See also Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (citations omitted)).

2. Plaintiff's NMHRA, Breach of Implied Contract, and Negligence Claims Must Be Dismissed Pursuant to Federal Enclave Doctrine

Defendants next assert that the Court should dismiss a number of Plaintiff's state law claims under the federal enclave doctrine. Doc. 15 at 3-5. "A federal enclave is created when a state cedes jurisdiction over land within its borders to the federal government and Congress accepts that cession." *Allison*, 689 F.3d at 1235. "[A]fter a state has transferred authority over a tract of land creating a federal enclave, the state may no longer impose new state laws on the[] lands. But state laws enacted before the cession continue to apply unless Congress specifically overrides them." *Id*. In other words, "the law on a federal enclave is the state law that governed the land at the time the federal government established the enclave, not state law enacted thereafter—unless that law was expressly adopted by the enclave's new sovereign, the federal government." *Id*.

In her amended complaint, Plaintiff alleges that the events that gave rise to this lawsuit occurred in Albuquerque, New Mexico, while she was an employee of Defendant Sandia. Doc. 11 at ¶¶ 6, 14. Plaintiff further acknowledges that Sandia is "located aboard Kirtland Air Force Base." *Id*. ¶ 2. In the notice of removal, Defendants attached the declaration of Defendant Carpenter, which states in relevant part that:

3. Sandia's Primary Standards Laboratory I and Primary Standards Laboratory II are located on Kirtland Air Force Base, in Sandia Building 827.

4. [Plaintiff] worked on in [sic] Sandia Building 827, on Kirtland Air Force Base, from on or about August 23, 2013 until on or about February 24, 2017. During the entire time [Plaintiff] has been employed by Sandia, she has worked on Kirtland Air Force Base.

. . .

7. Any actions I took or decisions I made with respect to [Plaintiff] were made while I was employed at Sandia, working on Kirtland Air Force Base.

14

Doc. 1-2. As the Tenth Circuit has recognized, Kirtland Air Force Base is a federal enclave because "it is located on land that New Mexico ceded to the federal government in 1952 and 1954." *Allison*, 689 F.3d at 1236. "Since that time the federal government has exercised exclusive jurisdiction within the boundaries of the [b]ase." *Id*. Because Plaintiff's lawsuit arises from conduct occurring during the course of her Sandia employment on Kirtland Air Force Base, it appears at first glance that the federal enclave doctrine bars any of Plaintiff's state claims that are based on New Mexico statutory or common law causes of action established after 1954. *See Benavidez*, 212 F. Supp. 3d at 1091-97 (dismissed plaintiff's NMHRA and state tort law claims against Sandia pursuant to the federal enclave doctrine); *Cf. Allison*, 689 F.3d at 1235-36 (holding that the federal enclave doctrine barred plaintiff's state employment and tort law claims against Boeing, a federal contractor located on Kirtland Air Force Base, for conduct that occurred on the base).

In response to Defendants' argument that the federal enclave doctrine bars a number of her state claims, Plaintiff initially urges the Court to delay ruling on Defendants' motion so that she may "conduct jurisdictional discovery to discern the locus of pertinent decision making." Doc. 21 at 2-3. The Court, however, previously acknowledged this request for discovery and by separate order, gave Plaintiff an opportunity to file a motion setting forth the specific jurisdictional discovery she sought. *See* Docs. 27, 29. Plaintiff did not file such a motion, nor did she seek an extension of time to do so. Because Plaintiff has seemingly abandoned her request for jurisdictional discovery, the Court disregards her request to delay ruling on the motion and proceeds to decide this issue on the basis of the evidence already in the record.

The only argument Plaintiff raises against the applicability of the federal enclave doctrine is based on her May 18, 2017 affidavit. *See* Doc. 21 at 2. Although Plaintiff does not dispute that

some of her state law claims are barred under the federal enclave doctrine to the extent they are premised on conduct that occurred on Kirtland Air Force Base, she asserts in her response brief and accompanying affidavit that the federal enclave doctrine should not bar any claims arising from conduct that occurred off base. *Id.* Specifically, Plaintiff states in her affidavit that Sandia's human resources department was located off base during the relevant time period, that she met with the human resources department, including an equal opportunity representative, to report her need for reasonable accommodations and the instances of discrimination, harassment, and retaliation that she was subjected to, and that the human resources department took no action. Smelser Aff., May 18, 2017, Doc. 21 (Ex. A).

These assertions in Plaintiff's affidavit regarding Sandia's human resources department are notably absent from Plaintiff's amended complaint. Aside from generalized assertions in her complaint that Defendant Sandia did not accommodate her medical restrictions and engaged in discriminatory and retaliatory conduct, *see* Doc. 11 at ¶¶ 20, 22, 40, 45, Plaintiff did not allege any of her claims are premised on the actions of Sandia's human resources department, or lack thereof. Rather, the bulk of Plaintiff's allegations revolve around the conduct of individual Defendants Tran, Carpenter, and Mertes. *See id.* at ¶¶ 24-38. Plaintiff attempts to overcome this pleading deficiency by arguing in her response brief that the "lack of accommodation and ratification of discrimination took place with the human resources department" because the "personnel issues" she took to her supervisors presumably "should have [] been turned over and dealt with by human resources employees." Doc. 21 at 2. However, even taking into account Plaintiff's assertions regarding the location and involvement of Sandia's human resources department, the Court nevertheless concludes that Plaintiff's claims remain subject to the federal enclave doctrine.

As this Court has previously held, the critical inquiry is whether the conduct or employment decision at issue here "reflects Defendants' employment practice on the enclave" – in other words, whether the claims that Plaintiff asserts with regard to her employment "arose by virtue of [her] employment on the federal enclave." *See Richards v. Lockheed Martin Corporation et al.*, No. 2:11-cv-01033-WJ-CG, March 1, 2012 Mem. Op. and Order at 3. Defendants correctly characterize this as a determination of "the locus in which the claim arose", i.e., "where the 'substance and consummation of the' claim occurred, and where 'all pertinent events occurred.'" Doc. 25 at 2 (*quoting Olig v. Xanterra Parks & Resorts, Inc.*, 2013 WL 3936904, at *3 (D. Mont. July 30, 2013) (unpublished) (internal citations omitted)). Here, Plaintiff does not dispute that she worked in a Sandia building on Kirtland Air Force Base and that all of the events giving rise to this lawsuit—with the exception of the above assertions regarding Sandia's human resources department—took place on Kirtland Air Force Base. Specifically, the reasonable accommodations Plaintiff alleges were not provided, the alleged discrimination and retaliatory incidents, and the purported violations of Sandia's employee handbook all concerned her work activities on the base. Furthermore, Plaintiff does not dispute Defendant Carpenter's declaration that all three individual defendants worked with Plaintiff on the base and that all decisions Defendant Carpenter made in her supervisory role regarding Plaintiff's employment occurred on base.

Under these facts, the Court concludes that Plaintiff's claims arose by virtue of her work on a federal enclave and that any decisions Sandia's human resources department may have undertaken reflected Defendants' employment practices on the enclave. *See Richards*, No. 2:11-cv-01033-WJ-CG, March 1, 2012 Mem. Op. and Order at 3 (finding that although the decision to terminate plaintiff was made outside the enclave, plaintiff's state claims with regard to his

termination were barred by the doctrine because "regardless of where the decision not to retain [Plaintiff] was made, the decision reflect[ed] Defendants' employment practice on the enclave"); *See also Shurow v. Gino Morena Enterprises, LLC*, 2017 WL 1550162, at *2 (S.D. Cal. May 1, 2017) (finding that the federal enclave doctrine barred plaintiff's state claims even though the employer's human resources department was located off base and the decision to terminate her employment was made by management off base because "[i]n the context of claims by employees against contractor employers operating on a federal enclave, the [federal enclave] Doctrine applies if the plaintiff's place of employment was located on the federal enclave."); *Haining v. Boeing Co.*, 2013 WL 4874975, at *3 (C.D. Cal. Sept. 11, 2013) (unpublished) (holding that "[a] plaintiff's place of employment is the significant factor in determining where the plaintiff's employment claims arose under the federal-enclave doctrine")[5]; *Lockhart v. MVM, Inc.,* 175 Cal. App. 4th 1452, 1459 (Cal. Ct. App. 2009) ("Although [plaintiff] was at home at the time [she] received her termination letter—and although that letter may have originated at [defendant]'s corporate headquarters in Virginia—[plaintiff] was the employee of a federal contractor operating on a federal enclave. Thus, her employment claims are governed by the enclave's law.").

Plaintiff's state law causes of action under the NMHRA and breach of an implied contract based on an employment manual were both recognized in New Mexico after the federal

---

[5] In a similar vein to Plaintiff's arguments here, the plaintiff in *Haining* alleged that the federal enclave doctrine was inapplicable to his state claims because "(a) his complaints [regarding employment] were communicated to Boeing Human Resources and Equal Employment Opportunity representatives located outside the enclave; (b) these Boeing representatives confirmed [his] complaints and conducted their investigation outside the enclave; (c) Boeing's representatives also confirmed [his] requests for accommodations for Parkinson's disease while outside the enclave; and (d) Boeing's representatives denied [his] requested accommodations based on decisions made outside the enclave." 2013 WL 4874975, at *2. The district court rejected these arguments, finding that because the plaintiff "was employed by Boeing exclusively at Vandenberg [Air Force Base], his claims arose within a federal enclave—regardless of where decisions concerning his employment or termination were made." *Id*. at *3.

government's acquisition of Kirtland Air Force Base. *See Allison*, 689 F.3d at 1243 ("New Mexico did not recognize an implied contract for employment arising from an employment manual until 1980" and thus, at the time of cession of Kirtland Air Force Base, "the New Mexico courts did not recognize an implied *employment* contract that could be breached by failure to follow certain procedures"); *See Benavidez*, 212 F. Supp. 3d at 1097 ("The NMHRA, which the New Mexico Legislature enacted in 1969, . . ., did not exist in 1954."). Plaintiff does not argue that her NMHRA and breach of an implied contract claims come within a reservation of jurisdiction by New Mexico or that Congress has adopted them. Accordingly, the federal enclave doctrine bars Plaintiff's NMHRA and implied contract claims. *See Allison*, 689 F.3d at 1243 (holding that federal enclave doctrine barred plaintiff's claim against federal contractor on Kirtland Air Force Base for breach of an implied contract based on an employment manual); *See Benavidez*, 212 F. Supp. 3d at 1097 (holding that federal enclave doctrine barred plaintiff's NMHRA claims against Sandia).

In addition, Plaintiff's negligence claim is subject to dismissal under the federal enclave doctrine. Although Plaintiff argues that "the duty of employers to provide employees with a reasonably safe working environment" has been "long recognized", *see* Doc. 21 at 3, she does not explain how or when this duty arose in the context of New Mexico negligence law. The single case Plaintiff cites to in support of her argument, *Flores v. Danfelser*, 1999-NMCA-091, 985 P.2d 173, is from 1999 (long after Kirtland Air Force Base became a federal enclave) and has since been overruled. *See Delgado v. Phelps Dodge Chino, Inc*., 2001-NMSC-034, 34 P.3d 1148. Furthermore, to the extent *Flores* discusses an employer's duty to provide a reasonably safe work environment, it does so not in the context of negligence law, but federal constitutional civil rights law. *Id*. ¶¶ 26-27. Because Plaintiff has failed to point to a case or statute recognizing

her specific theory of negligence before 1954, the Court finds that the federal enclave doctrine bars Plaintiff's state law negligence claim.

In sum, the federal enclave doctrine bars Plaintiff's state causes of action under the NMHRA (Count I), breach of implied contract (Count IV), and negligence (Count II). These claims are therefore dismissed with prejudice.

3.   Plaintiff has Failed to State a Claim for Assault

Defendants next seek dismissal of Plaintiff's assault claim against Defendant Tran under Rule 12(b)(6). Doc. 15 at 6-7. Plaintiff alleges in her amended complaint that, on one occasion, Defendant Tran "cornered Plaintiff in the office, screamed and berated her in a unprofessional and hostile manner in an attempt to embarrass, intimidate and belittle Plaintiff." *Id.* ¶ 41. Plaintiff's assault claim is that:

> 48. Defendant Hy Tran exhibited a systematic tendency to mistreat female employees working at Sandia Corporation.
>
> 49. Hy Tran intentionally engaged in high intensity verbal assaults on Plaintiff.
>
> 50. These assaults left Plaintiff with a reasonable apprehension of offensive contact.

Doc. 11 at ¶¶ 48-50.

The Tenth Circuit has indicated that for there to be a tortious assault under New Mexico law, "there must have been an act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1208 (10th Cir. 2006). "Battery occurs when an individual 'acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results.'" *Id.* at 1208-09 (omission in original) (quoting *State v.*

*Ortega,* 1992-NMCA-003, ¶ 12, 827 P.2d 152, 155 (1992)). "To establish liability for assault under New Mexico law, therefore, a plaintiff must show that the defendant 'act[ed] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . [plaintiff was] thereby put in such imminent apprehension." *Archuleta v. City of Roswell, New Mexico*, 2013 WL 12329138, at *5 (D.N.M. May 23, 2013).

Defendants argue that Plaintiff's allegations that Defendant Tran "intentionally engaged in high intensity verbal assaults . . . [that] left Plaintiff with a reasonable apprehension of offensive contact" are insufficient to state a claim for assault because they are nothing more than recitations of the elements of assault. *See* Doc. 15 at 7. Defendants contend these allegations are legal conclusions couched as factual allegations. *Id*. The Court agrees. Plaintiff's amended complaint is devoid of any facts detailing the actual conduct by Tran that she alleges constitutes "high intensity verbal assaults." The Court cannot conclude that Plaintiff states a claim for assault simply based on her conclusory allegation that assaults occurred. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The only incident Plaintiff describes in any detail in her complaint is the office incident where Defendant Tran allegedly cornered Plaintiff, and screamed and berated her. Beyond alleging that Defendant Tran took these actions with the intent to "embarrass, intimidate and belittle Plaintiff", Plaintiff fails to allege that Defendant Tran acted that day with the intent to cause harmful or offensive contact between Plaintiff and himself or anyone else, or that he intended that Plaintiff be placed in imminent apprehension of such a contact. Nor are there other factual allegations regarding Defendant Tran from which the Court can draw an inference that Plaintiff reasonably believed she was in danger of immediate

harm. Therefore, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's assault claim (Count III) is dismissed with prejudice.

**V.      Conclusion**

Based on the foregoing analysis, the Court **grants** Defendants' Motion to Dismiss (Doc. 15). **It is hereby ordered that**:

1. Plaintiff's Title VII (Count V) and ADA (Count VI) claims are dismissed without prejudice.

2. Plaintiff's NMHRA (Count I), negligence (Count II), assault (Count III) and breach of implied contract (Count IV) claims are dismissed with prejudice.


UNITED STATES MAGISTRATE JUDGE
Presiding by Consent